UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DARRIN GRUENBERG,

    Plaintiff,

v.                                                      Case No. 09-C-455

CAPT. GEMPELER, et al.,

    Defendants.

**MEMORANDUM AND ORDER**

Plaintiff Gruenberg, who is proceeding pro se, lodged a civil rights complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. Plaintiff is currently incarcerated at Green Bay Correctional Institution. The Defendants have moved for summary judgment, and for the reasons given below, their motion will be granted.

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Most of the material facts here are not in dispute; instead, the parties emphasize different aspects of Plaintiff's treatment in custody and the reasons for that treatment. Where disputes arise, I resolve them at this stage in favor of Gruenberg, the non-moving party.

This case arose out of circumstances following the Plaintiff's unusual decision to steal a set of keys from a guard and then swallow them. On April 19, 2006, while serving at Waupun Correctional Institution, Gruenberg gained control of an officer's key ring while the officer was dispensing medication to him. The keys included handcuff keys, as well as keys to unlock waist

restraints and cell doors. The officer observed Gruenberg place the keys into his mouth and swallow them. For obvious reasons, an inmate's capture of keys set off a major security alert within the prison, and the warden and deputy warden were both notified immediately. (DPFOF ¶ 32.) The health unit was also alerted, and Gruenberg was taken to the emergency room at Waupun Memorial Hospital. An x-ray confirmed that the keys were in Gruenberg's abdomen and doctors believed he would pass the keys within five days with the help of a drug Gruenberg agreed to take.

After being taken to the hospital, Gruenberg was returned to prison with the keys still inside him. Upon his return, the Defendants strapped him, naked, to a concrete bedpost and gave him a "threadbare" mattress. Restraints were placed on his arms, legs and chest. Defendants explain that restraints were necessary in order to prevent Gruenberg from re-obtaining control of the keys after he passed them. In other words, if he were left unrestrained, he could pass the keys and then hide them somewhere in his cell or re-ingest them. After lying on his back for twelve hours in this position, he was then strapped to a restraint chair. He alternated between the chair and the bed for five days. He was naked throughout this period (due to the need to monitor his bowel movements), and he claims he was cold. He also asserts that the lack of exercise and movement hindered his ability to pass the keys through his system, although Defendants note that he was allowed thirteen exercise breaks in five days. Gruenberg also asserts that the position was painful and that he was denied common hygiene items. In addition, he alleges he was forced to lie in his own feces on two occasions and was denied the ability to clean himself, although Defendants state that he was allowed to wash or shower three times.

To succeed on a claim under the Eighth Amendment, Gruenberg needs to present evidence from which a factfinder could conclude that the conditions of his confinement resulted in "the denial

2

of the minimal civilized measure of life's necessities," and that the defendants were deliberately indifferent to the conditions in question, meaning that they knew of and disregarded an excessive risk to Gruenberg's health or safety. *See Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). Some prisoners, including the Plaintiff, seemingly have a limitless imagination and use it to place their custodians in situations for which there is no precedent, policy or guideline. The Eighth Amendment itself, of course, does not provide a clear roadmap as to how prison staff must treat an inmate who has swallowed a set of keys. Here, I conclude that the Defendants' approach was reasonable under the circumstances. Defendants first note that Plaintiff's cell was always kept between 72 and 77 degrees. No doubt a naked inmate would be uncomfortable for portions of that period, but given the cell temperature, which is warmer than most private homes, I cannot conclude that his discomfort reached sub-Eighth Amendment levels.

Much of Plaintiff's case is based on his allegation that he was forced to lie in his own feces without being allowed to clean himself. This is disputed by Nurse Frances Monroe-Jennings, who observed Plaintiff during his confinement. She states that "at no time during my review of Mr. Gruenberg did I observe him lying in his own feces, nor did I observe any medical concerns or issues resulting from a lack of adequate hygiene." (Dkt. # 41, ¶ 69.) Plaintiff argues that every night he complained to her that he was in need of cleaning (Dkt. # 76, ¶ 198), although his brief indicates that this happened on only two occasions. He does not allege that he was forced to lie in feces for extended periods of time, and he was visited by clinical and nursing staff some forty times during the five-day period he lay in restraints. Given the fact that he was not the only inmate

3

requiring the prison medical staff's attention, it is not altogether surprising that some delay in cleaning him may have occurred on several occasions.

Even accepting Plaintiff's version of events, however, I cannot conclude the Eighth Amendment has been violated. If Plaintiff had been denied adequate hygiene for a period of weeks or months, it would certainly be possible to find a violation. But here, the period was only five days, and he asserts merely that on "more than two" occasions he was forced to lie in his own feces for an unspecified period of time. The length of the period in restraints was determined by the time the doctors said it would take for Gruenberg to pass the keys naturally. Once it became clear that he was not going to be passing the keys naturally, he was released from restraints into a regular cell. (Surgery was ultimately performed to remove the keys.) Of course what Plaintiff alleges is unpleasant and under other circumstances it could constitute part of an Eighth Amendment violation. But here, lying in feces for some period of time on a few occasions is an unfortunate but necessary by-product of the difficult and highly unusual situation Plaintiff himself created. Plaintiff, an inmate at a maximum security prison, had obtained keys to handcuffs and cells and had them in his digestive tract. To help him pass the keys, he had taken medication. It was reasonable for the prison to use restraints to prevent Gruenberg from re-accessing the keys once they passed, and it follows that if one is fully restrained under such circumstances and has a bowel movement, there will be periods of time between one's bowel movement and when the prison staff checks in on the inmate and helps to clean him. And, although Gruenberg alleges that he complained about this, there is nothing in the record to suggest any of the Defendants were deliberately indifferent to his condition or purposely exacerbated the situation.

4

In sum, there is no doubt that Plaintiff was subject to brief periods of unpleasantness for five days. But there is no evidence suggesting that his conditions were anything other than the necessary conditions required by his own actions. As the Seventh Circuit noted in *Bowers v. Pollard,* "[a]lthough the denial of such basic items as a mattress or clothing may seem harsh in the abstract, we cannot evaluate prison conditions in a vacuum." 345 Fed.Appx. 191, 197, 2009 WL 2971085, *5 (7th Cir. 2009). The same holds true here. Under other circumstances, requiring an inmate to be restrained for five days while naked could constitute an Eight Amendment violation. But when it was required to prevent an inmate from reacquiring keys he had swallowed, it was a necessary, tailored and non-punitive response. *Id.* (finding that "Bowers did not present evidence from which a factfinder could conclude that the terms of [confinement] were anything other than a justified and well-tailored response to his repeated attempts to destroy property or use it to hurt himself.")

Accordingly, the Defendants' motion for summary judgment is **GRANTED**. All other pending motions are **DENIED**.[1]

**SO ORDERED** this   24th   day of September, 2010.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

[1] Plaintiff filed several discovery motions, but they are now moot. In granting summary judgment to the Defendants, I accepted all of Plaintiff's allegations as true. As such, additional discovery would not have been material to the outcome here.

5